**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

SHAWN P. ARMSTRONG,

    Petitioner,

        -vs-

WANZA JACKSON, Warden,

    Respondent.

Case No. 3:06-cv-087

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## SUBSTITUTED REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits after supplementation of the record by filing of Petitioner's Reply to Respondent's Amended Answer/Return of Writ (Doc. No. 46) and Petitioner's Supplement to Second Amended Petition (Doc. No. 49).

Petitioner was indicted by the Montgomery County Grand Jury on one count of burglary, one count of failure to comply with the order or signal of a police officer, and one count of receiving stolen property. He was convicted by a petit jury on all counts and sentenced to eleven and one-half years imprisonment.

In the Second Amended Petition[1], which the Court has reconstructed by comparing Doc. Nos. 24 and 31[2], Mr. Armstrong pleads the following Grounds for Relief:

> **Ground for Relief One:** Armstrong had his right to be free from the illegal search and seizure violated in violation of the 4th and 14th Amendments to the United States Constitution.

---

[1] Petitioner's first attempt to file a second amended petition was withdrawn (See Doc. Nos. 17, 20.)

[2] These documents, although both labeled Second Amended Petition by Mr. Armstrong, are not identical.

**Ground for Relief Two:** Armstrong was subject to unduly suggestive identification procedures in violation of the 5th and 14th Amendments to the United States Constitution as well as ineffective assistance of counsel in violation of the 6th and 14th Amendments to the United States Constitution at the motion to suppress hearing.

**Ground for Relief Three:** Armstrong had his 14th Amendment right to due process violated, where there was insufficient evidence to convict him.

**Ground for Relief Four:** Armstrong was denied his 14th Amendment right to due process under the United States Constitution when he was denied a fair trial when the trial judge called Armstrong's competency into question, but failed to appropriately act on it.

**Ground for Relief Four[2][3]:** Armstrong's 14th Amendment right to due process was violated with the trial court refused to grant Armstrong an extension of time for trial.

**Ground for Relief Five:** Armstrong's Sixth and 14th Amendment rights were violated when he was denied effective assistance of counsel.

**Ground for Relief Six:** Armstrong's 14th Amendment right to due process was violated when he was denied a neutral and detached magistrate.

**Ground for Relief Seven:** Armstrong's 5th and 14th Amendment right to due process and Sixth Amendment right to counsel was violated when the trial court committed error in granting the state's motion in limine and preventing Armstrong from presenting his defense.

**Ground for Relief Eight:** Mr. Armstrong's 5th and 14th Amendment rights and Sixth Amendment right to counsel were violated due to evidentiary error.

On July 22, 2008, the Court permitted Petitioner to supplement the Second Amended Petition by adding back the second ground for relief from his original Petition (See Doc. No. 40). That

---

[3]Petitioner has numbered two of his Grounds for Relief as Ground 4.

ground for relief, renumbered here as Ground Ten, is as follows:

> **Ground Ten:** Armstrong was sentenced to both maximum and consecutive terms of imprisonment, based on judicial findings not admitted by him nor proven beyond a reasonable doubt to a jury, in violation of his rights under the 6th Amendment to the United States Constitution and right to trial by jury.
>
> **Supporting Facts:** Mr. Armstrong was sentenced to both maximum and consecutive terms of imprisonment, based on judicial findings not admitted by Armstrong nor proven beyond a reasonable doubt to a jury. The sentencing court invoked the authority of R.C. 2929.14(C) and made requisite findings in support of its decision to impose maximum terms of imprisonment on Armstrong. The sentencing court also invoked R.C. 29291.4(E) and made requisite findings in support of its decision to impose consecutive terms of imprisonment on Armstrong.

(Supplement to Second Amended Petition, Doc. No. 49, at 3.)

## Procedural History

After conviction, Mr. Armstrong took a timely direct appeal *pro se* to the Montgomery County Court of Appeals, raising the following assignments of error:

> 1. The verdict should be reversed because the trial court violated appellant's right to a neutral and detached magistrate pursuant to the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section Ten of the Ohio Constitution, and unconstitutionally interfered with appellant's ability to obtain counsel of his choosing.
>
> 2. The verdict should be reversed because the trial court erred by not granting appellant's motion to suppress, and admitting evidence in violation of appellant's rights under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Constitution of Ohio, his rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section Ten of the Ohio Constitution, and appellant's

right to counsel under the Sixth Amendment to the United States Constitution.

3. The verdict should be reversed because the trial court committed error in granting the state's motion in limine and preventing appellant from presenting his defense in violation of his rights under the Due Process Clauses of the Fifth and fourteenth Amendments to the United States constitution, and article I, section ten of the Ohio Constitution, as well as appellant's right to counsel under the sixth Amendment to the United States Constitution.

4. The verdict against appellant should be reversed due to evidentiary error which violated appellant's rights under the due process clauses of the Fifth and fourteenth Amendments to the United States Constitution, as well as appellant's right to counsel under the Sixth Amendment to the United States Constitution.

5. The verdict should be reversed because the trial court failed to give appellant's trial counsel a continuance which deprived appellant of his rights under the due process clauses of the Fifth and fourteenth Amendments to the United States Constitution, and article I, section ten of the Ohio Constitution, as well as appellant's right to counsel under the sixth Amendment to the United States Constitution.

6. The verdict against appellant should be reversed because he received ineffective assistance of counsel in violation of his rights under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section Ten of the Ohio Constitution, as well as appellant's right to counsel under the Sixth Amendment to the United States Constitution.

7. The verdict should be reversed because the trial court failed to order a competency evaluation despite that issue being raised at pre-trial conferences.

8. The jury verdict should be reversed because there is insufficient evidence to warrant a conviction, and the verdict is against the manifest weight of the evidence.

9. The sentence should be reduced because there is a presumption against having consecutive sentences for multiple crimes growing out of the same incident exceeding the maximum penalty for most serious offenses.

(Appellant's Brief, Exhibit 18 to return of Writ, Doc. No. 34). The Court of Appeals overruled all assignments of error. Id., Ex. 20. On May 25, 2005, the Ohio Supreme Court granted Petitioner leave to file a delayed appeal, but then dismissed that appeal on July 5, 2005, because Petitioner had failed to file the required memorandum in support of jurisdiction. *Id*. at Ex. 26. In March, 2006, Petitioner again sought a delayed appeal to the Ohio Supreme Court, which was denied. Petitioner also filed an application for reopening the direct appeal to raise issues of ineffective assistance of appellate counsel, which the Court of Appeals denied. The Ohio Supreme Court declined to consider an appeal from that decision. Petitioner's June, 2006, motion to vacate his sentence as void under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L. Ed. 2d 403 (2004) was denied; Petitioner voluntarily dismissed an appeal from that decision.

The underlying facts as found by the Ohio Court of Appeals are as follows:

> On March 21, 2002, Donald Williams was outside of his home in Huber Heights when he saw a black minivan in his driveway. He noticed a woman in the passenger seat of the van. Williams then came upon an individual trying to "jimmy" the lock on the front door of the residence. Upon being questioned by Williams, the individual stated that he was there to do some work for a person whose name Williams could not recall at the time of trial. Williams informed the individual that he had the wrong house. Williams watched as the individual left in the van. Williams then called the police and reported the incident and the license plate number of the van.
>
> Officers from the Huber Heights Police Department responded to a dispatch regarding Williams' report. Officers located the van at the home of Katherine and Gary Abney, just down the road from the Williams residence. The officers attempted to prevent the van from leaving, but the driver drove through the Abney's yard onto the road and began fleeing from the police at high speed on several different roads and highways. The van eventually ran into a traffic sign and crashed.
>
> It was determined that the van belonged to Steven Terhune and that it had been stolen from Terhune's place of work. It was also

determined that the Abney's residence had been burglarized.

The driver of the van fled into a wooded area and eluded capture. The passenger, Angelica Stephens, was arrested. Stephens appeared as though she were barely able to stay awake. She told Huber Heights Detective Mike Noll that the driver was a white male named "Shawn." She also stated that Shawn had a tattoo on his abdomen and that he went by the street name of "J." Finally, she gave a description of the clothes that Shawn had been wearing.

Detective Noll and Detective Tom Milligan were assigned to investigate the identity of the driver. They gathered photographs of white males named Shawn with whom the police had had prior encounters. Angelica Stephens picked out a picture of an individual named Shawn Plessinger as the perpetrator. n1 The police then took the photographs and showed them to people in the areas where they believed Plessinger spent time. Teddie Skinner was one of the people to whom the photographs were shown. Several people told the police that Plessinger's photograph looked the most like the man known as Shawn, or "J."

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -
n1 According to the police, at the time Angelica chose the picture of Shawn Plessinger, she was still in a very lethargic state as a result of being in a self-described "crack coma."
- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The police then put together a photographic array that included Plessinger's photograph. From that array, Huber Heights police officer Victor Oakes identified Plessinger as the man who eluded the police. However, he noted that the individual who eluded the police had facial hair and longer hair not depicted in the Plessinger photo. The photographic array was show to Donald Williams, but he did not identify anyone. Thereafter, a warrant was issued for Shawn Plessinger.

Later, Detective Noll received an anonymous telephone call informing him that the "Shawn" that the police were looking for was in Grandview Hospital, under guard, in the custody of the Dayton Police Department. Upon arriving at the hospital, they found Shawn Armstrong in a room, under guard. He was unconscious. A hospital security guard lifted up Armstrong's gown to reveal a tattoo on his abdomen that said "money and love" in large lettering. The police took pictures of Armstrong's face and abdomen. They also realized

> that they had mistakenly taken out a warrant for Plessinger and promptly caused that warrant to be rescinded.
>
> The pictures of Armstrong's tattoo were shown to Angelica Stephens, who recognized it as the same tattoo that the Shawn driving the van from the burglary scene had had on his abdomen. A photographic array was put together, with Armstrong's picture included. That array was then shown to Stephens and Skinner, who both identified Armstrong as the Shawn in question. Skinner then gave a written statement to the police and indicated that she knew Armstrong through one of her friends. She stated that she knew that Armstrong had spoken about eluding the police and lying in a creek bed for a couple of hours while police were searching for him. She also said that Armstrong had muddy clothing in her home.

*State v. Armstrong,* 2005 Ohio App. LEXIS 482.(Ohio App. 2nd Dist. Jan. 31, 2005)(copy at Exhibit 20 to Return of Writ, Doc. No. 34).

**Procedural Default**

Respondent argues that all of Petitioner's Grounds for Relief are procedurally defaulted because he failed to properly raise them in the Ohio Supreme Court.

The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *see also Simpson v. Jones,* 238 F. 3rd 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal

habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963).

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Mapes v. Coyle,* 171 F. 3rd 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

> . . . .
>
> > Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
> >
> > Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
> >
> > Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d, at 138.

The first three branches of *Maupin* are readily met in this case. Ohio clearly has a rule that an appellant must file a memorandum in support of jurisdiction within thirty days of being granted a delayed appeal. Ohio S. Ct. R. II § 2(a)(4)(c) plainly states "If a memorandum in support of jurisdiction is not timely filed after a motion for delayed appeal has been granted, the Supreme Court will dismiss the appeal." That is precisely what happened here. The Ohio Supreme Court granted the delayed appeal on May 25, 2005, which made the memorandum in support of jurisdiction due June 24, 2005, thirty days later. On July 5, 2005, the Ohio Supreme Court dismissed the appeal for failure to file the required memorandum. (Ohio v. Armstrong, Case No. 05-594, Entry of July 5, 2005, copy at Ex. 15 to Doc. No. 18).

Petitioner claims he can show cause for the claimed procedural default on the first nine Grounds for Relief in that he claims he presented his memorandum in support of jurisdiction to the prison authorities for mailing on June 22, 2005. (Petitioner's Motion for Leave of Court to

Supplement the Second Amended Petition, Doc. No. 39, at 2; Petitioner's Reply to Respondent's Amended Answer, Doc. No. 46, at 17-). Petitioner relies on the prison mailbox rule for which he cites *Fallen v. United States*, 378 U.S. 139, 84 S. Ct. 1689, 12 L. Ed. 2d 760 (1964). *Id*. at 5. While the federal courts do in fact follow what is known as the prisoner mailbox rule – a paper destined for court is deemed filed by a prisoner when deposited with prison authorities for mailing, *Houston v. Lack,* 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988) – Ohio has refused to adopt the mailbox rule. *State, ex rel Tyler, v. Alexander*, 52 Ohio St. 3d 84 (1990)(noting that *Houston* is not a constitutional decision and finding its logic unpersuasive.) The Sixth Circuit has further held that the prisoner mailbox rule is not binding on the States. *Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003); *Adams v. LeMaster,* 223 F.3d 1177, 1183 (10th Cir. 2000).

In his Objections to the foregoing conclusion when made in the original Report and Recommendations and in his Reply to Amended Answer (Doc. No. 46), Petitioner relies on *Amon v. Ohio State Medical Board,* 67 Ohio App. 3d 287,290, 586 N.E. 2d 1165 (Ohio App. 10th Dist. April 10, 1990), *citing State v. Williamson*, 10 Ohio St.2d 195, 196, 226 N.E.2d 735, 736 (1967). However, two months after the Tenth District Court of Appeals decided *Amon*, the Ohio Supreme Court expressly and unanimously held in *Tyler, supra,* that it would not follow the mailbox rule. *Amon* has not been good authority for the mailbox rule in Ohio since 1990, more than ten years before this case arose.

The Ohio Supreme Court's rule requiring that a memorandum in support of jurisdiction be filed within thirty days of granting a delayed appeal is an adequate and independent state rule and Petitioner has not shown cause and prejudice to excuse his failure to comply. His argument that he was unable to obtain an "industrial grade" stapler for several days to use on his intended filings is

insufficient. Nothing in the Rules of Practice of the Ohio Supreme Court requires that *pro se* filings be stapled or bound in a particular way. His first nine Grounds for Relief are barred by his failure to timely file a memorandum in support of jurisdiction on his delayed appeal.[4]

A great deal of Petitioner's writing in this case centers on his Fourth Amendment claim that the tattoo on his stomach, which formed a crucial link in the eventual chain of evidence which convicted him, was photographed in violation of his Fourth Amendment rights. Even if this claim were not procedurally defaulted, it would not merit habeas corpus relief for at least two reasons.

First of all, federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of

---

[4]In his Motion for Leave of Court to Supplement the Second Amended Petition, Mr. Armstrong discusses at some length his efforts to file a notice of appeal and memorandum in support of jurisdiction from the Court of Appeals' denial of his Application for Reopening. This of course is a different appeal from the delayed direct appeal, although Mr. Armstrong was at work on both in May, 2005.

> appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526. The fact that Petitioner did not win his motion to suppress or that he failed to file his memorandum in support of jurisdiction in the Ohio Supreme Court in timely fashion does not make the procedure unfair.

Secondly, there was no violation of Petitioner's Fourth Amendment rights in the taking of the photograph. At the time it was taken, he was in police custody, albeit in Grandview Hospital because of injuries suffered in his arrest on unrelated charges. As the Ohio Court of Appeals held on this point, Petitioner submitted no authority to them and they were aware of none "holding that the taking of a photograph, on a person in custody, in a hospital, is an unreasonable search and seizure." (Quoted by Petitioner at Reply to Amended Answer, Doc. No. 46, at 29.) Petitioner still submits no authority to this Court from the United States Supreme Court which would show that this decision by the Ohio Court of Appeals is an objectively unreasonable application of clearly established federal law. Petitioner is of course correct that taking a photograph amounts to a seizure of evidence, but photographing persons in custody for identification purposes has never been held to be an unreasonable seizure.

Petitioner is so convinced of the correctness of his position that he asserts the tattoo "never existed" until it was photographed. That assertion is patently untrue. It may well be that the police did not know of the tattoo until it was photographed and the photograph was shown to potential witnesses, but it did not come into existence when it was photographed.

There is apparently little doubt that the tattoo formed an important part of the identification

in that prior to finding it, some of the authorities believed the person who committed the crime for which Petitioner was convicted was a person named "Shawn Plessinger." Petitioner never argues that Mr. Plessinger has a tattoo at the same place on his body that Petitioner does, or that anyone else who was in Huber Heights on the date of the crime has a stomach tattoo which reads "Love and Money." Put another way, a person who voluntarily has his body tattooed with a distinctive marking creates potential evidence which may help identify him as an offender, which is presumably why taking photographs of tattoos on arrested persons is not uncommon police conduct. As the Court of Appeals decided, that police conduct has never been held to be an unconstitutional seizure. Therefore, even if Petitioner's Fourth Amendment claim were not procedurally defaulted, it would not provide a basis for habeas relief.

Petitioner's sentencing claim, his Tenth Ground for Relief, is also procedurally defaulted because, as he himself admits, the first time he attempted to present it to the Ohio Supreme Court was in his second attempt at a delayed direct appeal. (See Motion for Leave of Court to Supplement the Second Amended Petition, Doc. No. 39, at 2). This attempt was dismissed by the Ohio Supreme Court because Ohio does not have any procedure for taking a second delayed appeal. Thus Petitioner procedurally defaulted this claim by not including it in his first delayed appeal.

In his Objections to the original Report and Recommendations, Petitioner makes a lengthy argument that he is actually innocent and that his actual innocence excuses his procedural default. To come within the actual innocence exception to the required showing of cause and prejudice with respect to an abuse of the writ, a habeas petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. That is, the petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a

reasonable doubt' in the light of the new evidence he or she is tendering. In reaching this conclusion, the habeas court may need to make credibility determinations. *Schlup v. Delo,* 513 U.S. 298, 115 S. Ct. 851, 130 L.Ed.2d 808 (1995). Petitioner here does not submit any new evidence of actual innocence. Instead, he argues with the jury's conclusion that the evidence actually presented at trial shows he is not guilty. But an actual innocence claim requires the production of new evidence, not the rearguing of old. *See House v. Bell,* 547 U.S. 518 (2006).

**Conclusion**

Because all of Petitioner's Grounds for Relief were procedurally defaulted in the Ohio courts, the Petition should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

October 11, 2008.

                                                                    s/ **Michael R. Merz**
                                                Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).